UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ISLAH ALI,

    Plaintiff,

v.

VANESSA COOPER, et al.,

    Defendants.

Case No. 17-cv-03658-EMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Docket No. 20

Plaintiff Islah Ali was terminated from employment by the Alameda Housing Authority ("AHA") and now brings claims against the AHA and Individual Defendants Vanessa Cooper, Janet Basta, Lynette Jordan, and Kara Korbel for discrimination on the basis of religion, race, and sexual orientation; creation of a hostile work environment; breach of contract; and negligent and intentional infliction of emotional distress. Plaintiff invokes the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940(a), the Unruh Civil Rights Act, Title VII of the Civil Rights Act, 42 U.S.C. § 20000e, *et seq.*, and the 13th and 14th Amendments to the U.S. Constitution.

As the Court stated at the hearing, Plaintiff's allegations are insufficiently pled, except insofar as Plaintiff alleges that Defendants discriminated against her on the basis of religion in suddenly terminating her husband's healthcare. The Court will therefore **GRANT IN PART AND DENY IN PART** Defendant's motion to dismiss and afford Plaintiff an opportunity to amend her complaint, consistent with the holding below. The Court urges Plaintiff to craft the amended complaint, if she files one, in a clearer and more focused manner.

# I. FACTUAL BACKGROUND

Plaintiff worked for the AHA from April 2004 to 2016. Compl. ¶¶ 4. She is a self-identified heterosexual African-American Muslim woman. Defendant Cooper began working as the AHA's Executive Director in approximately 2014. *Id.* ¶ 8. Defendant Basta was the Director of Human Resources. *Id.* ¶ 9. Defendant Jordan was the Housing Programs Director with responsibility for Section 8 Housing tenant eligibility and residential unit inspections. *Id.* ¶ 10. Defendant Korbel is the Family Self-Sufficiency Coordinator who oversees tenants' needs. *Id.* ¶ 11. Plaintiff alleges that Defendants Cooper and Korbel are "of an LGBT orientation." *Id.* ¶ 41.

A. <u>Religious Discrimination Allegations</u>

Plaintiff alleges that she and her family members, including her husband, were covered under Defendant's health insurance policies for nine years, from 2004-2015. She alleges that Defendants Cooper and Basta caused her husband's coverage to be terminated once they learned that she had performed a "Muslim solemnization." Though the insurance provider had previously accepted a notarized statement as sufficient proof of marital status, Defendants Cooper "performed research and located an obscure and rarely utilized provision that a copy of an employee's Marriage Certificate was the only acceptable proof of a valid marital union," *id.* ¶ 23, convincing CalPERs to drop coverage of Plaintiff's spouse. Plaintiff alleges she was singled out in this manner because of her Muslim faith.

B. <u>Racial Discrimination Allegations</u>

Plaintiff's racial discrimination allegations fall under three categories: (1) direct examples of racial remarks or harassment by tenants in the field; (2) perceived differential treatment by her coworkers or supervisors but no allegations of remarks concerning her race by those individuals or other factual information to support an inference that she was treated differently because of her race; and (3) discipline of Plaintiff for a racial remark she herself made to an African-American co-worker.

With respect to the first category (harassment by tenants), Plaintiff alleges that when she made field visits to residential units, on several occasions those tenants were hostile to her. For example, a tenant referred to her as "you people;" she has been called the n-word "when

2

commuting to and from several inspections;" she was refused entry to a residence where she observed swastikas and skulls; and when she reported the incidents to her supervisors, they "turned a deaf ear and took no action to remedy the situation so that Plaintiff would not be required to endure that racist and threatening behavior again." Compl. ¶ 32.

With respect to the second category (differential treatment), Plaintiff alleges she was not given the opportunity to avoid dangerous situations as were other employees who were able to avoid, *e.g.*, tenants with contagious health conditions or other environmental dangers, Compl. ¶¶ 29-31, and that a young, white co-worker treated her disrespectfully but was not disciplined, Compl. ¶ 34-35.

With respect to the third-category (discipline for a racial remark), Plaintiff apparently called Defendant Korbel, an African-American colleague, an "overseer" at a work session. Compl. ¶ 37. Though Plaintiff claims she intended no harm, Defendant Cooper determined the comment was racially insensitive, suspended Plaintiff for four days without pay, and required her to take a sexual harassment sensitivity course. *Id.* ¶ 38.

C. Sexual Orientation Discrimination

Plaintiff alleges that Defendants Cooper and Korbel are "of an LGBT orientation," ¶ 41, and they discriminated against her as a heterosexual employee by requiring her to take a sexual harassment sensitivity course that had nothing to do with the alleged racial remark she made. *See* Compl. ¶¶ 42, 46-48, 104. Other than the required training, Plaintiff does not allege anything suggesting that Defendants treated her differently because of her sexual orientation.

D. Plaintiff's Performance Issues

Plaintiff alleges that her termination was based on a combination of her (i) history of tardiness; (ii) the racial remark she made to Korbel; and (iii) her inability to properly use a new hand-held computer device. She claims that due to her tardiness Defendant Korbel was tasked with documenting her arrival and departure times, which made Plaintiff feel singled out, particularly when she was teased for inability to properly complete time cards, *see* Compl. ¶¶ 52-58. Additionally, she alleges that her requests for additional training on the hand-held computer device were denied. *Id.* ¶¶ 66-75. These allegations appear to be geared at undermining the

3

legitimacy of Defendants' basis for terminating her.

## II. <u>DISCUSSION</u>

A. <u>First, Third, and Fifth Causes of Action Against Defendants Cooper and Basta</u>

Defendants argue that the three FEHA discrimination claims based on failure to provide a religious accommodation (1st cause of action: complaint, ¶¶ 81-85); disparate treatment race discrimination (3rd cause of action, ¶¶ 91-95); and disparate treatment sexual orientation discrimination (5th cause of action, ¶¶ 101-106) should be dismissed because individual employees may not be liable for discrimination claims under FEHA as a matter of law.

Defendants are correct. Individual employees may be liable under FEHA only for acts of "harassment," not "discrimination." The distinction California courts draw is that "harassment" consists of actions unnecessary to carrying out one's official job duties (*e.g.*, touching, assault, inappropriate remarks, and so on) for which an individual employee may be liable, whereas "discrimination" describes only acts attributable to the employer because they "arise out of the performance of necessary personnel management duties," such as "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like." *Reno v. Baird*, 18 Cal.4th 640, 646-57 (1998); *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55 (1996).

Plaintiffs' allegations against the individual employee defendants all fall under the umbrella of "discrimination" rather than "harassment" because they revolve around the discharge of official job duties. For example, Count 1 (religious discrimination) relates solely to their alleged roles in the termination of Plaintiff's spouse's healthcare coverage. Count 2 (race discrimination) relates to their alleged failure to remedy mistreatment of Plaintiff by tenants in the course of her job; failure to reprimand another co-worker who demeaned Plaintiff; reprimanding Plaintiff for making a "harsh" statement to a co-worker; and reprimanding Plaintiff for calling another colleague an "overseer." Compl. ¶ 92. Count 5 (sexual orientation discrimination) arises from the training course she was required to take, also a typical personnel management decision. These are the type of personnel management decisions that, under *Baird*, fall under the category of

4

"discrimination" for which only the employer may be liable, not "harassment" for which individual employees may be liable.

Accordingly, the Court **GRANTS** Defendant's request to dismiss Counts 1, 3, and 5 against individual Defendants Cooper and Basta. Defendants have not moved to dismiss these claims against the AHA, so these counts remain against AHA.

B.      Second Cause of Action Against Defendants Cooper and Basta

Individual supervisors may not be held liable for damages under Title VII. *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993) (holding that Title VII "limit[s] civil liability to the employer" and damages may not be recovered from individual employees). Count Two mirrors Count One in alleging a failure to accommodate Plaintiff's religious beliefs by terminating her healthcare. Accordingly, the Court **GRANTS** Defendant's request to dismiss Count 2 against Defendants Cooper and Basta. However, Defendants have not moved to dismiss this claim against the AHA, so that claim remains in the case.

C.      Seventh Cause of Action for Harassment Under FEHA

As explained above, virtually all of Plaintiffs' allegations fall under the umbrella of "discrimination" claims, not "harassment." Plaintiff only makes two allegations that come closer to the mark of "harassment." First, she alleges that Defendant Korbel, her former supervisor, "mocked" her publicly for failing to complete her time cards. However, she does not allege facts showing that such teasing was based on her race. She does not claim, *e.g.*, that others similarly situated were treated differently or that Korbel used racial slurs against her. Accordingly, this does not appear to state a viable claim for racial harassment.

Second, she alleges that Defendants turned a blind eye when tenants called her the n-word. Compl. ¶ 32. However, this is, at best, an allegation of harassment by the tenant, not by her supervisors or co-workers. Thus, her supervisors cannot be held individually liable for it. *See* Cal. Gov. Code § 12940(j)(3) ("An employee of an entity subject to this chapter is personally liable for any harassment prohibited by this section *that is perpetrated by the employee . . . .*") (emphasis added).

To the extent Plaintiff's co-workers failed to take action to protect her, that falls under the

5

umbrella of a "discrimination" claim, not "harassment," because it relates to the discharge of an official duty (*i.e.*, the obligation to remedy a hostile environment caused by a third-party). Accordingly, for the reasons discussed above, this claim may be brought against the AHA but not the Individual Defendants under FEHA.

The Court **GRANTS** Defendant's request to dismiss the Seventh Cause of Action against the Individual Defendants. However, Defendants do not request dismissal as to the AHA, so that claim remains.

D. <u>Eighth Cause of Action for Harassment Violating Fourteenth Amendment</u>

Defendants incorrectly claim that the Fourteenth Amendment does not support a hostile environment cause of action. "Discriminatory harassment in the form of a hostile work environment may be actionable through a 42 U.S.C. § 1983 claim based on a violation of the Fourteenth Amendment's equal protection clause." *Cooper v. Cate*, 2011 WL 5554321, at *6 (E.D. Cal. Nov. 15, 2011); *see also Kelly v. City of Oakland*, 198 F.3d 779 (9th Cir. 1983) (affirming liability of senior employee under § 1983 for violation of co-worker's rights by quid-pro quo sexual harassment); *Bator v. State of Hawai'i*, 39 F.3d 1021, 1028 (9th Cir. 1994) ("We also have held that severe or pervasive physical and verbal harassment can be impermissible sex discrimination under the Equal Protection Clause."); *Leiland v. City and County of San Francisco*, 576 F.Supp.2d 1079, 1100 (N.D. Cal. 2008) ("Harassment in the form of a hostile work environment constitutes unlawful discrimination in violation of Title VII, FEHA, and 42 U.S.C. sections 1981 and 1983.").

The Court construes Plaintiff's Fourteenth Amendment claims as Section 1983 claims and will address them on the merits below.

E. <u>Fifth Cause of Action for "Reverse" Sexual Orientation Discrimination</u>

Plaintiff alleges sexual orientation discrimination under FEHA on the basis that her LGBT-identified supervisor required her, a heterosexual identified woman, to take a sexual harassment sensitivity course after she called a colleague an "overseer."

Plaintiff failed to exhaust her administrative remedies, however. The two administrative charges she filed did not refer to sex or sexual orientation, or to the sexual harassment sensitivity

training she complains of.  *See* Docket Nos. 21-1, 21-2.  The sexual orientation claim is not related to and cannot be reasonably expected to have grown out of the EEOC's investigation of her charges of racial or religious discrimination.  *See Freeman v. Oakland Unified School Dist.*, 291 F.3d 632, 636 (9th Cir. 2002); *Shah v. Mt. Zion Hospital and Med. Ctr.*, 642 F.2d 268, 271-72 (9th Cir. 1981).

Even if the Court were to consider the claim on the merits, the Court would dismiss because Plaintiff fails to plausibly plead that her supervisors were motivated by anti-heterosexual animus simply because they identify as LGBT persons.  Again there is no allegation of a pattern of discrimination against heterosexuals or examples of disparate treatment of others who were otherwise similarly situated.

Thus, the Court **GRANTS** Defendant's motion to dismiss the Fifth Cause of Action as to all Defendants.  Plaintiff may amend only if she can demonstrate she in fact filed an administrative charge addressing sexual orientation discrimination *and* provide a factual basis to infer that Defendants required her to take the training course because of her heterosexual status.

F. <u>Eleventh Cause of Action for Violation of Post-Civil War Statutes</u>

Defendants request dismissal of all the Section 1983 claims.  The Court's analysis here also applies to the Eighth Cause of Action (brought under the Fourteenth Amendment and construed under Section 1983).

1. <u>AHA and *Monell* liability</u>

There are three ways to support liability against a municipal entity for civil rights violations by a subordinate employee under Section 1983.  First, when the plaintiff shows that the violation was caused by an official policy, custom, or practice of the entity.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).  Second, when the unconstitutional conduct is carried out by an official with "final policy-making authority."  *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  Third, when a final policy-maker "ratifie[s] a subordinate's unconstitutional decision or action and the basis for it."  *Id.*  In the latter two scenarios, "a single decision by a municipal policymaker may be sufficient to trigger section 1983 liability under *Monell*, even though the decision is not intended to govern future situations."  *Id.* at 1347.

7

1    Here, Plaintiff fails to allege any official policies, customs, or practices with regard to her

2 racial and sexual harassment or discrimination claims. Moreover, she does not allege that any of

3 the individual defendants were final policy-makers.[1] Accordingly, the Section 1983 claims against

4 the AHA are dismissed to the extent they are based on race or sex discrimination.

However, Plaintiff has identified an official policy in relation to her religious discrimination claim. In particular, she alleges that marriage certificates are the sole accepted proof of marriage. *See* Compl. ¶ 23. That is an official policy that could support *Monell* liability if it is found to be unconstitutional.

Accordingly, the Court **GRANTS** Defendant's motion to dismiss the *Monell* claim with respect to race and sex discrimination with leave to amend, but **DENIES** to the extent the claim is premised on religious discrimination for the marriage-certificate policy.

2.   Individual Defendants

Defendants argue that the § 1983 claims against the Individual Defendants must be dismissed because no constitutional violation has plausibly been stated. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court agrees.

a.   Racial Discrimination

The allegations regarding Plaintiff's discipline and suspension for calling a co-worker an "overseer" do not support a claim of racial discrimination. Plaintiff does not allege any facts showing that she was disciplined because of her own race. For example, she does not allege that other co-workers of a different background who made comparable racial remarks were treated more favorably than she was. Nor does she allege that the supervisors who disciplined her used racial slurs, or point to any signs of race-based animus. Though she claims a young white co-worker who was rude to her was not disciplined, she does not plausibly plead that the co-worker

---

[1] "Whether a particular official has final policy-making authority is a question of state law." *Id.* at 1346. "[T]he official in question must possess final authority to establish municipal policy with respect to the challenged action." *Christie v. Iopa*, 176 F.3d 1231, 1236 (9th Cir. 1999) (quoting *Fiorenzo v. Nolan*, 965 F.2d 348, 351 (7th Cir. 1992)). "In making these determinations, courts consider whether the official's discretionary decision is constrained by policies not of that official's making and whether the official's decision is subject to review by the municipality's authorized policymakers." *Id.* at 1236-37.

8

acted because of Plaintiff's race. Thus, the AHA's response to the co-worker's acts (rudeness) is not comparable to Plaintiff's acts (racial remark).

Plaintiff's strongest allegations pertain to harassment by tenants or residents. Under Title VII, "[a]n employer may be held liable for the actionable third-party harassment of its employees where it ratifies or condones the conduct by failing to investigate and remedy it after learning of it." *Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir. 2005). Under Title VII, an unlawful hostile environment can be caused either by co-workers and supervisors' own acts of direct misconduct (such as when a supervisor sexually harasses an employee) or by an employer's failure to respond to harassment by third-parties such as customers or clients.[2] Plaintiff's claim falls in the second category. That type of hostile environment theory "is grounded in negligence and ratification rather than intentional discrimination." *Id.* Although a negligence theory might support liability under Title VII,[3] however, it would not support a constitutional tort *unless* Plaintiff could allege facts demonstrating that Defendants' failure to correct the hostile environment created by tenants was *intentional* (not merely negligent) and based on Plaintiff's race. To rise to the level of a constitutional tort for discrimination under the Equal Protection Clause, the plaintiff must allege that the defendant acted *intentionally* and on the basis of race. *See*, *e.g.*, *Washington v. Davis*, 426 U.S. 229 (1976) (equal protection clause only supports claims for intentional discrimination); *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009) (constitutional tort requires showing that defendant "acted with discriminatory purpose"). Plaintiff has alleged no specific facts in this regard. The Court doubts whether Plaintiff can meet this high threshold but will grant Plaintiff an opportunity to do so if she has good faith and non-frivolous grounds.

---

[2] *Compare Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir. 2005) (hostile environment claim based on "fail[ure] to investigate and remedy" harassment by customers, clients, or other third-parties "is grounded in negligence and ratification rather than intentional discrimination") *with Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.").

[3] To demonstrate a hostile environment, Plaintiff also needs to plead that racial slurs or other abusive treatment by residents in the field were "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). That issue was not briefed and therefore is not addressed in this opinion.

9

Defendant's motion to dismiss the Section 1983/Fourteenth Amendment claims on the basis of race against all Defendants is **GRANTED** with leave to amend.

### b. Religious Discrimination

Plaintiff alleges that Defendants singled her out to terminate her husband's health insurance coverage because her marriage took the form of a "Muslim solemnization," is unsupported by a civil marriage certificate, and Defendants relied upon a rarely-utilized and obscure policy to do so. *See* Compl. ¶¶ 19-23.

Plaintiff's allegations are cognizable under the Fourteenth Amendment's Equal Protection Clause if she pleads that Defendants were motivated by religious animus. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009) (a plaintiff must plead that defendants "acted with discriminatory purpose" and "because of, not merely in spite of, [their actions'] adverse effects upon an identifiable group" (quotation omitted)). Plaintiff alleges that the evidence of her medical documentation was *suddenly* deemed insufficient, even though it had been accepted for nearly 10 years, and that this sudden change in applying an obscure and rarely applied policy was done in response to *her* situation. Compl. ¶¶ 19-23. No other explanation for the sudden change is apparent from Plaintiffs' allegations. *Cf. Marshall v. Am. Hosp. Ass'n*, 157 F.3d 520, 526 (7th Cir. 1998) (circumstantial evidence such as "sudden change in attitude upon disclosure that the plaintiff is [a] member of a protected class" permits inference of discrimination when otherwise unexplained); *Hofmann v. City & Cty. of San Francisco*, Case No. C 11-4016 CW, 2013 WL 6734091, at *4 (N.D. Cal. Dec. 20, 2013) ("suspicious timing" supports inference of discrimination). Thus, Plaintiff adequately states a claim for intentional discrimination on the basis of her religion under the Equal Protection Clause against Defendants Cooper and Basta. This claim, however, is inadequately pled against the AHA under *Monell* because Plaintiff does not allege that the official marriage-certificate policy itself was motivated by animus, but rather, that the Individual Defendants' *enforcement* of the policy against her was motivated by animus. Moreover, for the reasons explained above, she has not adequately pled that Defendants Cooper or Basta were final policy-makers who either committed or ratified the unconstitutional acts to support *Monell* liability.

Alternatively, Plaintiff may be able to plead a § 1983 claim premised on the First Amendment's free exercise clause if the requirement for a marriage certificate burdens a sincerely held religious belief and is not narrowly tailored to achieve a compelling state interest. *See Droz v. C.I.R.*, 48 F.3d 1120, 1122 (9th Cir. 1995). California does not recognize common law marriage, but it "does recognize the validity of a marriage contracted in another state that would be valid by the laws of that state." *People v. Badgett*, 10 Cal.4th 330, 363 (1995). This means that California law may recognize some out-of-state marriages even when they are not evidenced by a civil marriage certificate. There may be an argument that Defendant's marriage-certificate policy might not be narrowly tailored to achieve a compelling state interest if it fails to recognize a marriage that lacks a civil certificate but is nevertheless legally valid. At this time, however, Plaintiff has not alleged that her marriage was legally-valid because it is not clear whether she has a civil marriage certificate or if she was married in and in accordance with the laws of another jurisdiction. Additionally, Plaintiff has not alleged that the marriage-certificate policy burdens a sincerely held religious belief. Thus, at this time, this First Amendment theory is inadequately pled.

In sum, the Court **DENIES** Defendant's motion to dismiss the Section 1983 claim premised on violation of the Equal Protection Clause against Defendants Cooper and Basta, but **GRANTS** the motion with respect to Section 1983 claim premised on the Equal Protection Clause against Defendant AHA and premised on the First Amendment with respect to all Defendants. Plaintiff shall have leave to amend in accordance with the Court's ruling above.

G. Ninth and Tenth Causes of Action for Intentional and Negligent Infliction of Emotional Distress

Defendants argue that the emotional distress claims must be dismissed on the basis of governmental immunity (Cal. Gov. Code § 815), exclusivity of the workers' compensation doctrine, and failure to plead extreme or outrageous conduct.

1. Governmental Immunity

Governmental immunity does not require dismissal. Though California's Government Claims Act exempts public entities from tort liability except where provided by statute, *see* Cal.

Gov. Code § 815(a); *Miklosy v. Regents of the Univ. of Cal.*, 44 Cal.4th 876, 899 (2008), it has by statute extended liability to the entity where an individual employee acting within the scope of his or her employment could be held liable. *See* Cal. Gov. Code § 815.2(a). Accordingly, governmental immunity is not a basis to dismiss the Ninth and Tenth Causes of Action.

2. Workers Compensation Exclusivity

The doctrine of workers' compensation precludes tort claims for any injury arising out of the normal course of the employer-employee relationship, including claims for intentional and negligent infliction of emotional distress. *See Light v. Cal. Dep't of Parks and Recreation*, 14 Cal.App.5th 75, 96 (2017). "[W]hen the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." *Cole v. Fair Oaks*, 43 Cal.3d 148, 160 (1987). Thus, to the extent Plaintiff's emotional distress claims are premised on issues like her termination, her discipline, the supervision of her arrival and departure times, the requirement to take anti-harassment training, the requirement to use a hand-held device, or the requirement to give 24 hours' notice, her claim is precluded by the workers' compensation doctrine.

However, an intentional infliction of emotional distress claim is not precluded by the workers' compensation doctrine when it is based on discriminatory conduct that violates public policy. *See Smith v. Int'l Brotherhood of Electrical Workers*, 109 Cal.App.4th 1637, 1658 (2003) (discriminatory conduct violating public policy "cannot be considered a normal part of the employment relationship and the plaintiff's remedy is not confined to workers' compensation"). As explained above, however, Plaintiff fails to state a claim for intentional discrimination by any of the Individual Defendants, so her IIED claim also fails.[4]

---

[4] Furthermore, mere termination, not in violation of public policy, does not constitute extreme or outrageous conduct as a matter of law. *See Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984) (claim that employee was fired without good cause does not support a tort

12

Plaintiff's negligent infliction of emotional distress claim, however, is dismissed without leave to amend because it is precluded by the workers' compensation doctrine, and no similar exception exists for intentional discriminatory conduct because intentional acts cannot form the basis of a negligence claim. *See*, *e.g.*, *Semore v. Pool*, 217 Cal.App.3d 1087, 1105 (1990) (dismissing NIED claim where the actions "were intentional, not negligent"); *cf. Coit Draper Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal.App.4th 1595, 1609 (1993) (insurer had no duty to defend because alleged sexual harassment was inherently intentional conduct, not negligent conduct coverable by policy).

The Court **GRANTS** Defendant's motion to dismiss the IIED and NIED claims, but Plaintiff has leave to amend the IIED claim if she can state a valid claim for intentional discrimination as explained above.

H.   Twelfth Cause of Action for Common Law Breach of Contract

Defendants argue that the contract claim against the Housing Authority must be dismissed because public civil service employees hold employment by statute and not by contract under *Miller v. State of Cal.*, 18 Cal.3d 808, 813-814 (1977). However, *Miller* does not preclude contract claims based on a collective bargaining agreement.

Nevertheless, a contract claim premised on breach of a CBA requires that an employee first exhaust their grievance and arbitration procedures. *See Clayton v. Int'l Union, United Auto., Aerospace and Agricultural Implement Workers of Am.*, 451 U.S. 679, 681 (1981). Plaintiff fails to allege exhaustion of the union grievance and arbitration procedures.

Moreover, Plaintiff's claim against the individual defendants fails because there was no contract between her and her co-workers. *See Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir. 1999) (only a party to a contract may be liable for its breach).

The Court **GRANTS** Defendant's motion to dismiss. Plaintiff has leave to amend to state a claim against the AHA only if she can allege a breach of the CBA and that she exhausted the grievance and arbitration procedures.

---

claim for IIED).

I. <u>Motion to Strike References to California Unruh Act</u>

Defendants argue that references to the Unruh Act (California Civil Code section 51) should be stricken from the complaint because that statute does not apply to employment discrimination. *See*, *e.g.*, *Rojo v. Kilger*, 52 Cal.3d 65, 77 (1990) ("[T]he Unruh Civil Rights Act has no application to employment discrimination."); *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493 (1970) (holding that the California Legislature intended to exclude the subject of employment discrimination from the Unruh Act). Defendants are correct, but the proper vehicle is dismissal under Rule 12(b)(6), not striking under Rule 12(f). *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010); *Williams v. County of Alameda*, 26 F.Supp.3d 925 (N.D. Cal. 2014). The Court treats the request to strike as a motion to dismiss and **GRANTS** it.

### III. <u>CONCLUSION</u>

In sum, the Court **DENIES** Defendant's motion to dismiss the following claim:

- Counts 8 and 11 (Section 1983/Fourteenth Amendment) against Defendants Cooper and Basta premised on religious discrimination pursuant to the Fourteenth Amendment's Equal Protection Clause because Plaintiff adequately alleges that Defendants were motivated by religious animus when they suddenly terminated her husband's health-care coverage pursuant to the marriage-certificate policy.

The Court **GRANTS** Defendant's motion to dismiss the following claims, but Plaintiff may amend to re-allege them if she corrects the deficiencies discussed in this opinion and summarized below:

- Count 7 (racial harassment under FEHA) against Defendants Cooper and Basta *only if* she can allege that they engaged in acts of harassment under *Baird* (*e.g.*, slurs, physical contact, etc.) unrelated to performance of their official duties motivated by her race and/or religion.

- Counts 8 and 11 (Section 1983/Fourteenth Amendment) against Defendant AHA on racial and sexual orientation discrimination grounds *only if* she can allege facts showing that she was subjected to unconstitutional actions on the basis of her race or sexual orientation, and that the AHA acted pursuant to an official policy, practice, or

14

custom, or that a final policy-maker ratified or committed the unconstitutional acts.

- Counts 8 and 11 (Section 1983/Fourteenth Amendment) against all Defendants on religious discrimination pursuant to the First Amendment's free exercise clause grounds *only if* she can show that the marriage-certificate policy burdens a significantly held religious belief and is not narrowly drawn to serve a significant state interest.
- Counts 8 and 11 (Section 1983/Fourteenth Amendment) against Defendant AHA on religious discrimination pursuant to the Equal Protection Clause *only if* she can allege a *Monell* claim arising out of Defendants Cooper and/or Basta's conduct, or that the marriage-certificate policy's initial adoption was motivated by religious animus.
- Counts 8 and 11 (Section 1983/Fourteenth Amendment) against the Individual Defendants on racial discrimination grounds *only if* she can show that Defendants failed to correct the hostile environment created by tenants *intentionally* and *because of* her race.
- Count 5 (sexual discrimination under FEHA) against all Defendants *only if* Plaintiff can demonstrate that she exhausted her administrative remedies.
- Count 9 (intentional infliction of emotional distress) *only if* Plaintiff can state a claim for intentional discrimination as explained above.
- Count 12 (breach of contract) with respect to Defendant AHA *only if* Plaintiff can allege that she exhausted the grievance/arbitration procedures required by her collective bargaining agreement, and that Defendant breached the collective bargaining agreement.

The following claims are dismissed without leave to amend because amendment would be futile.

- Count 10 (negligent infliction of emotional distress) as to all Defendants
- Count 12 (breach of contract) as to the Individual Defendants
- The Unruh Act claims under all counts

Furthermore, Defendants did not move to dismiss the following claims so they remain in the case:

- Counts 1, 3, and 5 (race and religion discrimination under FEHA) against Defendant AHA

- Count 2 (religious discrimination under Title VII) against Defendant AHA

This order disposes of Docket No. 20. Plaintiff must file an amended complaint within 30 days.

**IT IS SO ORDERED**.

Dated: January 30, 2018

_____
EDWARD M. CHEN
United States District Judge